**Hannah Randall, Appellee, v. Mayme Hardy Randall, Appellant.**

**Gen. No. 27,082.**

1. LIBEL AND SLANDER—*admissibility of evidence of previous conversation as tending to show malice of defendant toward plaintiff.* In an action for slander, testimony of plaintiff as to a conversation between plaintiff and defendant and her husband which took place

two weeks before the alleged slander, in which conversation defendant and her husband were alleged to have made threats against plaintiff, was admissible as tending to show malice towards plaintiff and so tending to show that defendant uttered the words complained of.

2. LIBEL AND SLANDER—*inadmissibility of evidence of improper relations between defendant and her husband before divorce from plaintiff.* In an action for slander, evidence tending to show improper relations between defendant and her husband before their marriage and before the husband was divorced from plaintiff was inadmissible.

3. LIBEL AND SLANDER—*inadmissibility of evidence of conversation between parties and defendant's husband subsequent to uttering of slander.* In an action for slander, testimony of an alleged conversation between plaintiff and defendant and defendant's husband which took place six years after the uttering of the alleged slander was inadmissible.

4. LIBEL AND SLANDER—*impropriety of instruction as to presumption of defendant's malice and his duty to rebut presumption.* Where defendant in an action for slander denied the utterance of the slanderous words, an instruction that, if the jury believed that defendant uttered the words as alleged, the law presumes malice and that it rests upon defendant to rebut that presumption to the satisfaction of the jury, was error.

5. TRIAL—*impropriety of argument not assisting but tending to inflame jury.* In an action for slander, argument of counsel for plaintiff on matters that would in no way assist the jury in arriving at a verdict, and which tended only to inflame or prejudice the jury, was improper.

Appeal from the Superior Court of Cook county; the Hon. OSCAR HEBEL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1921. Reversed and remanded. Opinion filed June 28, 1922.

LITSINGER, HEALY & REID, for appellant.

IRVING G. ZAZONE, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought this action for slander against the defendant. There was a verdict and judgment in

plaintiff's favor for $2,500, to reverse which the defendant prosecutes this appeal.

Plaintiff's theory of the case was that the defendant maliciously called plaintiff "you low whore, you dirty whore" in the presence of a great many people in a public street in Chicago. The defendant denied that she used any such words toward the plaintiff and denied that she bore her any ill-will or was prejudiced against her. It appears from the evidence that plaintiff had been married to Louis E. Randall and that he obtained a divorce from her in 1909; that about six months after the divorce he married the defendant. Plaintiff testified that in the afternoon of January 17, 1914, she was crossing Clark street going from the City Hall Square Building toward the east entrance of the County Building; that about the time she reached the sidewalk on the west side of Clark street she met defendant, who was walking north on that sidewalk, and defendant in the presence of a great many people passing in the street uttered the slanderous words. She further testified that as she was crossing Clark street she met a Mrs. Carter, a colored servant of hers, who had been with her mother and her family for a great many years, and that after defendant uttered the slanderous words, one James C. Galligan, who was passing in the street, heard the words and gave his name and address to plaintiff. Plaintiff further testified that in December, 1913, about two weeks prior to the time in question, her former husband, who was then the husband of defendant, requested plaintiff to call at his office; that she did so and there met him and the defendant; that defendant and her husband then stated that plaintiff had better stop the litigation which she then had against them, that defendant and her husband were wealthy while plaintiff was not and that if plaintiff did not do as requested they would have her taken to the Psychopathic Hospital and to an insane asylum; that they

further requested that plaintiff turn over to them certain affidavits that apparently had something to do with the litigation that was there mentioned. Plaintiff further testified that about July, 1920, more than six years after the alleged utterance of the slanderous words, plaintiff was taken to the Psychopathic Hospital in Chicago on petition of the defendant's mother, Mrs. Hardy, and that while plaintiff was in that hospital she saw the defendant, her husband, and Mrs. Hardy, and that she had a conversation at that time with the defendant and her husband, which she detailed and which was in substance the same as the conversation that had taken place in December, 1913. Plaintiff's testimony as to the occurrence on Clark street concerning the utterance of the slanderous words was corroborated by the testimony of Mrs. Carter and by Galligan who testified in plaintiff's behalf.

The defendant testified in her own behalf and denied that she had used the slanderous words toward the plaintiff and denied that she had used any slanderous words of any kind or nature toward the plaintiff. She testified that on January 17, 1914, she together with her niece, a young girl eight or nine years of age, was walking north on the sidewalk adjoining the County Building on Clark street; that they walked by the plaintiff but that no words passed between them; that she did not see the colored woman with the plaintiff nor did she see the witness Galligan, although she testified there were a number of people passing on the street. She was corroborated in all of these particulars by her niece who was with her at the time. She and her husband denied that plaintiff had ever been at the office of Louis E. Randall and denied that any conversation had taken place, such as testified to by the plaintiff. They both further denied that they had been at the Psychopathic Hospital when plaintiff was there, or that they had any conversation with her at

that time or place. This testimony was also corroborated by defendant's mother, Mrs. Hardy.

On cross-examination of defendant plaintiff's counsel asked a number of questions which would at least tend to suggest that improper relations existed between the defendant and Louis E. Randall before their marriage and before he obtained a divorce from plaintiff. The defendant denied any such relations and there was no attempt made thereafter by the plaintiff to establish anything in this regard. Other questions were asked Louis E. Randall on cross-examination in reference to what counsel for the defendant terms newspaper publicity in the divorce proceedings. The testimony of the plaintiff in reference to the conversations that she said took place in December, 1913, about two weeks before she claimed the slanderous words were uttered, the testimony of the conversation in reference to the meeting at the Psychopathic Hospital, the questions put to the defendant and her husband touching the relations between them prior to their marriage, and the testimony as to divorce proceedings, were all objected to by counsel for the defendant. Some of the objections were sustained and some of them were overruled, but plaintiff's counsel persisted in asking a great many similar questions after the court held they were improper. Defendant contends that none of this was proper and that it was highly prejudicial to the defendant. All of these matters were collateral to the question involved, which was whether defendant uttered the slanderous words on the day in question. We think the conversation testified to by the plaintiff as having occurred at the Psychopathic Hospital about six years after the alleged slander was entirely too remote and should not have been admitted. We are also of the opinion that the questions put to the defendant and her husband above mentioned were likewise improper and that the sustaining of the objections to a great many of them

did not cure the error. There was a direct conflict in the testimony as to whether the slanderous words were uttered by the defendant. In these circumstances it is the law that evidence of collateral facts which have a direct tendency to show that the evidence of one side is more reasonable and, therefore, more credible than that of the other side is admissible. *Standard Brewery v. Healy,* 209 Ill. App. 272. But the questions asked of defendant and her husband did not come within this rule, nor did the conversation which plaintiff testified occurred at the Psychopathic Hospital. We think the testimony of plaintiff in reference to the conversation which she testified took place about two weeks before the alleged slander was admissible as tending to show malice of the defendant towards the plaintiff and might tend to show that defendant uttered the words complained of. We, therefore, hold that the testimony in reference to this conversation was proper, but the other evidence mentioned was improper and prejudicial.

Complaint is also made by the defendant to the giving of an instruction submitted by plaintiff that told the jury that if they believed from the evidence that the defendant spoke the slanderous words concerning the plaintiff in the presence of others as charged in the declaration, then the law presumed malice on the part of the defendant against the plaintiff "and it rests upon the defendant, Mayme Randall, to rebut that presumption, and if she has not done so to the satisfaction of the jury" then the jury must find that the words so spoken were spoken with malice on the part of the defendant. It is argued that this instruction required too much of the defendant because it required defendant to overcome the presumption of malice to the satisfaction of the jury. The plaintiff admits that it was not accurate to require defendant to prove to the satisfaction of the jury that there was no malice, but argues that it did not prejudice the defend-

ant because the case on the whole has been decided correctly. We think neither of the arguments made is sound because the defendant did not seek to overcome the presumption mentioned. She denied that she uttered the words at all, so that the instruction was not based on any evidence and, therefore, should not have been given.

In his argument to the jury counsel for plaintiff argued matters that would in no way assist the jury in arriving at a verdict, and most of them were highly prejudicial to the defendant. He stated that it would not be fair to tell the jury what Judge Kavanagh said about the divorce litigation or what the affidavits which the trial judge then held contained, and numerous references were made to other litigation which was apparently pending between the plaintiff and defendant and her husband. We think it would serve no useful purpose to comment further on counsel's argument to the jury since there must be a new trial. We will only add that much of it was entirely improper and prejudicial and only tended to inflame or prejudice the jury. This court and the Supreme Court have a number of times reversed judgments where the evidence bearing on the issue was sharply contested and contradictory, because of the improper argument of counsel. A number of such cases are cited in *Paulsen v. McAvoy Brewing Co.*, 220 Ill. App. 273.

For the errors enumerated the judgment of the superior court of Cook county is reversed and the cause remanded.

*Reversed and remanded.*

THOMSON, P. J., and TAYLOR, J., concur.